We would like to reserve three minutes of our time for rebuttal, which Mr. Bieth will present. All counsel on the case are present today. Thank you. Before you begin, we'll have the clerk put, then, seven minutes on the clock so you'll know precisely where you stand and if you would introduce yourself, please. Certainly. My name is Pete Schweda. I represent Lally Yang in this matter. I intend to demonstrate this morning that my client and the other defendants strictly complied with the specific rules of Washington State medical marijuana law that authorizes medical marijuana law. We would submit that the facts are undisputed in this case, basically, and that the only question is whether the facts satisfy the statutory language. I would submit that there is basically two discrete issues for the court to determine. The first one is the definition of person, and the second one is whether the 2011 amendments called MUCA require that a designated provider take a 15-day break between serving qualified patients. First, as to the definition of person, the definition of a designated provider includes that a person is 18 years of age or older. The district court found that because of the 18 years, U.S. Cannabis, which was the designated provider for all of the patients in this case, couldn't qualify. However, the Reese case that the district court relied on stated that MUCA is an exception to the Washington State Controlled Substances Act, or CSA, and that you have to interpret the exception to the general act, that you can't look at the exception in isolation, and that you need to achieve the overall statutory purpose. Here, the underlying CSA provides that a person can be an individual, corporation, or other entities. The word agent means an authorized person who acts on behalf of or at the direction of a manufacturer, distributor, or dispenser. That's under 6951.010b, and the definition of person is under 6951.010aa. So we would submit that. Which version are you using? I'm using the 2010, the 2007, the 1999. So I'm using the 2011 version of the definition of person and the exception, which is MUCA. The actual CSA, MUCA is under 6951a. The CSA is under 6951, which is the general act that prohibits possession of marijuana and other controlled substances, and it's that statute that provides the additional definitions of person and agent, and we're submitting that the Reese case says that you can't just look at the exception, that you have to look at the overall statutory purpose and not look at the exception in isolation. And so in that case, if we were reversed here and there was a prosecution going on, would the state be able to prosecute U.S. Cannabis as a corporation? And I think that they would. And so why would there be any significant difference to the definition of person under the MUCA provisions if all of your agents are 18 years of age or older? The other issue I wanted to get into, Your Honor, is the definition of designated provider. This was a section that would have been changed if Governor Gregoire had not vetoed several provisions. However, this is a holdover from the MUMA to MUCA, and it provides that the designated provider is only one patient at a time, and that was given a judicial gloss by the state courts to say that what that means is you can serve patients one at a time serially, and it extended the Shupe case, which was the Shupe case, to the Marquardt case to say if you can serve more than one person at a time serially, one must be able to grow marijuana for more than one patient at a time. There is nothing that has changed the gloss of that statute to the rules. Just again to be sure, are you looking at the language in the 2011 amendment? Actually, it was going to be amended, but Governor Gregoire vetoed that amendment, so this retained the definition of designated provider from MUMA to MUCA. And while MUMA was in effect, the Court of Appeals in the state of Washington found that a designated provider could grow marijuana for more than one patient at a time, and so if you had two patients, you would be able to grow 15 plants or 24 ounces or one and a half pounds times two. There is nothing of the sections that the district court relied upon. They can all be read consistently with the definition of designated provider with a gloss that's been given to it by the Court of Appeals of the state of Washington. For example, the district court relied on 69-51A-102 that if you may, a person may stop serving as a designated provider to a given patient at any time, but you couldn't start again with a new patient unless 15 days had elapsed from the date the first patient had designated you. So as long as the patient had designated you more than 15 days before, you could go right away. But there's nothing in there that prohibits a designated provider from serving more than one patient at a time. The other one is the investigating officer does not possess information that the designated provider has provided for more than one patient in a 15-day period. The Frye case, which we cite, this is kind of like the presentment requirement in that case. The presentment requirement must be read in context. And in the Frye case, the court held, the state supreme court held that the presentment requirement facilitates the officer's decision whether to use his or her discretion to seize the marijuana or to arrest the perpetrator. You concede that Evans makes it your burden at a 538 hearing? Correct, Your Honor. And we submitted a 28-J letter. Wanted a yes or no on your answers? Yes. Thank you very much. I also appreciate your candor in the 28-J letter. I appreciate that. Thank you. Thank you. If it pleases the court, Earl Hicks representing the United States in this case. I want to start off by saying that, first of all, marijuana dispensaries, for medical marijuana dispensaries, have never been legal in the state of Washington. And I argued that in my briefing. I think that's enough to be said. Now, what crime we're dealing with is conspiracy to manufacture marijuana. And in order to be lawful and to do it, to manufacture marijuana, you have to be a designated provider or you have to be a marijuana patient. Now, clearly from the record, there were no designated provider paperwork for any of the actual people defendants in this case. And so under the conspiracy to manufacture 100 or more marijuana plants, no one, no person who was manufacturing that marijuana was a designated provider. So what's been created by the defense is some agency theory that there were agents. And when you look at the case closely, the testimony is that they weren't agents. They were operating independently. And where the two defendants come in on the conspiracy who were running these dispensaries is that they owned the property for the specific purpose of growing marijuana on that property. And during their testimony, they indicated they were not designated providers. And it's very important to understand that MUCA and its changes became effective in July 22nd of 2011, which is well before the first dispensary was opened on March 12th of 2012, well before the second dispensary was opened on November of 2012, and well before the third dispensary was opened on December 24th of 2012. Now, what happens is that in the Seattle area, marijuana dispensaries were tolerated. They were not legal. Tolerating something that's unlawful does not make it legal. And it shouldn't be that because something is tolerated that it's illegal, that this should enjoin the government from protecting its own interest. Now, during this, the hearing that we had, there was not a scintilla of evidence that what had taken place here was legal or was in strict compliance with the medical marijuana laws of the state of Washington. It was all to the contrary. The people growing the marijuana and responsible for the conspiracy, they were not designated providers. They could not be users of marijuana because they didn't have Washington State identification of any type. And in fact, what they did is they brought up marijuana plants, a minimum of 500 marijuana plants to the state of Washington from California after they were told that they would go to jail and that the property would be forfeited there. And when we look at this thing and we talk about advice of counsel, the question that was asked is, can you grow medical marijuana? You could call me, a federal prosecutor, and ask me, can I grow medical marijuana? And I would tell you in the state of Washington, yes, you can. But did anybody know that they were going to grow 1,031 marijuana plants? Was that attorney aware of that? There's no evidence of that whatsoever. Now, we talk about the fact that they need valid documentation at the location showing that they're a designated provider for somebody. And the statute says you have to ask. But what was clear evidence that the government proved is that there was no documentation. And no ask. And we didn't ask because there was no documentation. And witnesses indicated, including Yang, Defendant Yang and Defendant Senyo Sakutsabe, they indicated that they didn't have that. And Mr. Rodabow, another co-defendant, indicated that he had told them multiple times that they had to do that, but that they told them they weren't going to. Now, so would you just explain, given the governor's repeal, given the prior legislation, and given this language about being having a designated provider, what provision did they violate? Well, the provisions that they violated was, one, there was no designated provider. Two, the actual patients that were at the dispensaries, other than the dispensaries claimed that they themselves were the designated provider. Okay? And the government's saying, wait a minute, that corporation, you know, this other statute that's citing, that's not within MUCA. It's not within the medical marijuana laws that have to be strictly complied with. So they're bringing in a statute from outside to make the definition that's not within. The other thing that happens is that they couldn't manufacture because they were not patients themselves. The third thing that's there is there was a distinct change. And when counsel cite the Shoup case, it actually was decided, and I forget the exact date, excuse me, it was decided after the 2011 amendments. And in the Shoup case, they noted that the law had been changed. And their decision only applied to a prior statute. The law is clear, that you can have only one patient at a time, and there has to be a 15-day break. What happens is Section 2 tells the person who's the designated provider, that he can no longer become the designated provider. Remember, when they were growing this, the law clearly had changed. One person every 15 days. By the way, if you look at any of the medical marijuana websites, and I've got some in the supplemental excerpt of record, number one, it clearly says, when frequently asked questions, and it's the Washington State official website, that number one, you can only have one patient, one. Number two, it says medical marijuana dispensaries are not legal. So what happens is they were only allowed one. So once they had one, they couldn't have 300. And the mere fact that there was no withdrawal papers on either side is insignificant. Just like the procedures they used, they're insignificant for a number of reasons. The other thing is, is the source of their marijuana. The source of their marijuana was from an illegal source. Under Washington State medical marijuana law, and it's in my brief, what happens, it's only medical marijuana, if you're using it for the purpose, the patient themselves are using it for the purpose of their debilitating disease, of their medical issue. The source of marijuana grow was never, there was never any marijuana from that marijuana grow. What had happened is they were buying off, buying from their own medical marijuana patients, is what they said. But what happened is they're not entitled. When they did that, they weren't medical marijuana patients. So their source was illegal, the fact that they could only have one patient at a time, they didn't give any credence to that. And I'll say this, what you have here is deliberate ignorance. If you read the record, they never looked into anything. And when they're talking about, oh, marijuana's legal, what they're talking about is the recreational statute came into effect. That's what the defendant's talking about, because medical marijuana had been legal so long as you complied with the law since 1999. So when the defendant's talking about that, I see that on three seconds over. Thank you very much. Mr. Vieth, I think you have three minutes. Good morning. May it please the Court. My name is Nick Vieth and I represent Kamley-Sylkutsa Bay. I would like to make one quick note in regard to our Rule 28J letter and just kind of emphasize the Evans decision and the quote that we did put in there is that it is indeed our burden, but it's a more likely than not standard. And so I just wanted to really emphasize that portion of the Evans decision. In regard to this deliberate ignorance, I kind of want to start there, my response to what the government put forth. There is evidence that our clients strictly complied. They went above and beyond strict compliance by getting themselves a business license, by insuring themselves, by having a brick and mortar, by calling a lawyer. They truly went, at least according to our record, above and beyond. They did everything they possibly could to comply. Did the medical marijuana statute authorize marijuana grows without state approval? Yes, because the registry portion of the 2011 law was vetoed by Governor Greg Weyer and that was in response to the government's letter to Governor Greg Weyer indicating that if the state were to require this registry, that that would then indeed open up the potential for the Department of Justice to go after state employees. So the governor vetoed that portion so there was no registry, Your Honor. No requirement of any kind of approval to engage in growing marijuana. The 2000, and just to be specific to Your Honor's question, is this in regard to the registry portion that was vetoed out, Your Honor? Is that what the question is? It's a simple question. Under the medical marijuana statute, was there any requirement, any restriction on the ability of individuals to engage in the growing of marijuana? There definitely was. You had to be 18 years or older. You had to designate somebody if you couldn't do it yourself. And in this case, our clients formed a corporation and then that corporation was designated to provide medical marijuana to a certain number of individuals. So yes, there is a very rigid statutory scheme. The government says that the amount, the total amount in the marijuana grow we're concerned with here today would be enough to have 10 to 30 patients a day. What do you say to that? So each of those individuals had in their possession, they had in their possession hundreds, if maybe I recall, maybe even a thousand or more of these designated provider forms. So each of those would allow our corporation to grow 15 plants for each of those individuals. So the number I think here is irrelevant. It is the amount of those designated provider forms that our clients were able to show the court. So if there was one, yes, Your Honor, you'd be correct. We would far exceed that amount, but we didn't have just one. We had hundreds, if not, I'll have to look into the record, but it could be more likely a thousand. The government has represented to us that the state's own website said the medical marijuana dispensaries were not legal in the state of Washington at the time. Is that correct? There was some information, but I don't know when that information was disseminated, whether or not that information was specifically disseminated to our clients. There's nothing in the record there. That would be pretty strong evidence that the state itself didn't believe that corporate ownership would allow you to distribute marijuana on a widespread basis. And again, that may be an agency decision and somebody in Olympia thinking that, but the statutory scheme that our clients were under at the time did allow for that. Because you were a corporation. Correct. As a person. Correct. Yes, and I believe my time is almost up. Oh, it's completely up. I see the red button, Your Honor.
judges: Hawkins, McKeown, Bybee